REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1317

September Term, 2013

_____

JEFFREY WALTON

v.

NETWORK SOLUTIONS

_____

Kehoe,
Reed,
Eyler, James R.
  (Retired, Specially Assigned)

JJ.

_____

Opinion by Reed, J.

_____

Filed: February 26, 2015

This appeal arises out of a civil suit premised upon Section 14-3002 of the Commercial Law Article ("C.L.") of the Maryland Code, the Maryland Commercial Electronic Mail Act ("MCEMA") (2002), which prohibits the sending of commercial e-mails that contain unauthorized, false, or misleading information, and C.L. Section 13-301, the Maryland Consumer Protection Act ("MCPA") (1975, 2005 Repl. Vol.), which prohibits unfair or deceptive trade practices including making "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers[.]" C.L. § 13-301(1).

Jeffrey Walton's ("Appellant") complaint alleged that Network Solutions ("Appellee") violated the MCEMA because appellee sent numerous e-mails to him using "unavailable e-mail address[es] purporting to be legitimate and reachable[,]" and because the e-mails' subject line contained false or misleading information. Appellant also alleged that appellee violated the MCPA, because he was not removed from appellee's e-mail distribution list, despite his numerous efforts to "unsubscribe." Appellee moved to dismiss the action in the Circuit Court for Montgomery County. The circuit court granted the motion and dismissed appellant's case with prejudice. Appellant noted an appeal raising the following four questions that we rephrased for clarity:

 I. Did the circuit court improperly convert the motion to dismiss to a motion for summary judgment?

 II. Did the circuit court err in granting a motion to dismiss for failure to state a claim upon which relief can be granted with respect to appellant's MCEMA claim relating to a

misrepresentation of the e-mails' origin or transmission path?

III. Did the circuit court err in granting a motion to dismiss for failure to state a claim upon which relief can be granted with respect to appellant's MCEMA claim relating to a misrepresentation in the e-mails' subject line?

IV. Did the circuit court err in granting a motion to dismiss for failure to state a claim upon which relief can be granted with respect to appellant's MCPA claim that appellee employed a misleading oral or written statement?

We answer all four questions in the negative, and, therefore, affirm the judgment of the circuit court.

**FACTUAL AND PROCEDURAL BACKGROUND**

On March 7, 2013, appellant filed suit against appellee in the Circuit Court for Montgomery County seeking statutory and injunctive relief. Appellant's complaint alleged that from 2009 to 2012, appellee sent numerous e-mails to him using "unavailable e-mail address[es] purporting to be legitimate and reachable." After appellant replied to appellee's e-mail message, he received the following message: "The mailbox to which you attempted to send your email is not monitored." Appellant asserted that appellee "initiated, conspired to initiate, and assisted in the transmission" of an advertisement via e-mail, and that the e-mails contained "'false or misleading information about the origin or the transmission path of the commercial electronic mail'" and that "[t]hey contain[ed] false information in the 'From' line and in the 'Received from' line[,]" violating the MCEMA. (quoting C.L. § 14-3002(b)(2)(ii)).

In setting forth his second MCEMA claim, appellant's complaint asserted that appellee "initiated, conspired to initiate, and assisted in the transmission" of an

2

advertisement via e-mail, and that the "messages contained 'false or misleading information in the subject line that has the capacity, tendency, or effect of deceiving the recipient'" violating the MCEMA. (quoting C.L. § 14-3002(b)(2)(iii)).

Next, Appellant alleged that appellee violated the MCPA, because he was not removed from appellee's e-mail distribution list, despite his numerous efforts to "unsubscribe." Appellant spoke to an employee of appellee's in November 2009, and following appellant's request to "unsubscribe," the employee sent an e-mail on November 13, 2009, stating, "I have confirmed that your email address and phone number have been added to our Do Not Contact lists and any marketing communications will cease within the next 7 - 10 business days." Despite this assurance, appellant's exhibit reveals that he received an e-mail on December 1, 2009, and that he continued to receive e-mails from 2009 to 2011. Subsequently, appellant spoke to another employee of appellee's, but he continued to receive e-mails from 2011 to 2012.

On June 10, 2013, appellee filed a motion to dismiss for failure to state a claim pursuant to Rule 2-322(b), and a request for a hearing. On June 28, 2013, appellant filed an Opposition to the Motion to Dismiss and a Request for Hearing. Appellee then filed a reply in support of its motion to dismiss on July 3, 2013.

A hearing was held on August 7, 2013, and the circuit court entered an order granting the motion to dismiss with prejudice on the same day. The circuit court "considered all the papers that the parties . . . filed . . . together with the entire file[]" as well as "the arguments of counsel." The court further considered allegations that appellant made in his opposition to the motion to dismiss, which appellant indicated he would

3

potentially add to the complaint were he granted leave to amend. The circuit court dismissed the first MCEMA claim that appellee failed to provide truthful information about the origin or transmission of the path of the e-mail messages, because appellant failed to indicate what was false about the origin or transmission of the e-mail. In addition, the circuit court found because appellant knew that these e-mails came from appellee and because appellee conceded to sending the e-mails, that appellant was not mislead about the e-mails' origins.

The circuit court also dismissed the second MCEMA claim that appellee's e-mails contained false or misleading information in the subject line. Similarly, the circuit court found that appellant did not indicate any false statement in the subject line of the e-mail. It explained that appellee was "making offers for things that it does," and determined, therefore, there was no falsity.

Finally, the circuit court held that appellant's MCPA claim that appellee made misrepresentations that had the capacity to deceive appellant was barred by the statute of limitations. The court explained that appellant received appellee's confirmation that he was unsubscribed on November, 13, 2009, but he received another e-mail from appellee as early as December 1, 2009. The circuit court found, therefore, that appellant "should or could have been aware" that the conversation was false on December 1, 2009.

For purposes of determining whether the circuit court granted a motion to dismiss or a motion for summary judgment, the circuit court's full ruling is provided below:

> [I]n treating a motion for failure to state a claim the standard that applies is that we must treat as true that which is alleged and give all reasonable inferences in favor of the non-moving

4

party, in this case the plaintiff. With that standard in mind let me address . . . the counts separately. In this case, and I have also included in that consideration not just the allegations in the complaint, but really in an abundance of caution that which plaintiff has added by way of his opposition . . . he has made or added some more specifics not really a formal amendment of the complaint but he has told us essentially what he might do if he were given leave to amend. I am looking specifically at some of the email addresses we talked about in some of the other matters. It's clear to me having looked at the standard applicable to this motion that simple bold allegations are inadequate and in this case while the plaintiff has done a good job of saying and identifying the causes of actions the statutes that he wishes to go under he really has not said either in the complaint itself or in the additional material that he provided by way of the opposition what is false about any of this information. In other words if you look at count one false misleading information about the origin or the transmission path, well in the complaint he says its false if you look at the opposition he says these are the email addresses so looking at it all together it[']s clear to me that there is, it may be hard to read but it's not false. I mean these emails came from Network Solutions. . . . So looking [at it] altogether it does not appear to me that there is a falsity there nor has he, if you look at altogether can he allege that.

With respect to count number two, I think the same problem appears in his complaint including the exhibit that is attached to it, of course we look at all that together. Even putting aside the limitations problem which I don't think you have to reach for that argument I don't see what exactly is false about these subject lines. I mean Network Solutions is offering, making offers for things that it does. There's nothing false about that and I do think that that is something that he has to allege.

Finally with respect to count 3[,] I agree with counsel that it suffers from the statute of limitations problem even if you take us through the allegations that the plaintiff made which is that there was this conversation on November 13 of 2009. . . . [Thereafter,] [t]here was an email that was received as quickly as . . . December 1st of 2009 that was received about two and a half weeks or thereafter after this conversation and so at that point December 1, 2009[,] that's when the plaintiff should or

5

could have been aware that that conversation if it was false was false.

## DISCUSSION

### I. PRELIMINARY MATTERS

### A. Parties' Contentions

Appellant contends that the circuit court's ruling was a grant of a motion for summary judgment, because the circuit court considered numerous items outside the pleadings. Specifically, appellant argues that the circuit court considered appellee's Memorandum in Support of its Motion to Dismiss, which contained content of a purported e-mail to demonstrate that the e-mails were not false. The appellant asserts that the circuit court made it clear that it relied on the parties' oral arguments during the August 7, 2013, hearing, and all papers filed. Appellant contends that he was prejudiced because he had not been given prior notice that the hearing held on August 7, 2013, would be a hearing for summary judgment. As a result, appellant asserts that he did not have an opportunity for discovery prior to the hearing.

Appellee counters that the circuit court did not convert the motion to dismiss to a motion for summary judgment, but that the court was considering the additional facts only in its consideration of whether to grant appellant leave to file an amended complaint.

### B. Analysis

As a preliminary matter, the parties disagree as to whether the circuit court's ruling was a dismissal or a grant of summary judgment. We hold that the circuit court's ruling was a dismissal.

"[W]hen a trial judge is presented with factual allegations beyond those contained in the complaint to support or oppose a motion to dismiss and the trial judge does not exclude such matters, then the motion shall be treated as one for summary judgment." *Okwa v. Harper*, 360 Md. 161, 177 (2000) (emphasis added); *see also Smith v. Danielczyk*, 400 Md. 98, 104-05 (2007) ("Although no extraneous material was attached to either the complaint or the motion to dismiss in this case, appellees made certain factual averments in the memorandum they filed in support of their motion" and "[b]ecause the court dismissed the complaint without explanation, it is not clear whether any of that material was, in fact, considered. The record does not indicate that the extraneous documents or averments were 'excluded' by the court, however, so we must assume that they were considered.").

In its ruling, the circuit court stated:

> [I]n treating a motion for failure to state a claim the standard that applies is that we must treat as true that which is alleged and give all reasonable inferences in favor of the non-moving party, in this case the plaintiff. With that standard in mind let me address . . . the counts separately. In this case, and I have also included in that consideration not just the allegations in the complaint, but really in an abundance of caution that which plaintiff has added by way of his opposition . . . he has made or added some more specifics not really a formal amendment of the complaint but he told us essentially what he might do if he were given leave to amend. I am looking specifically at some of the email addresses we talked about in some of the other matters. It's clear to me having looked at the standard applicable to this motion that simple bold allegations are inadequate and in this case while the plaintiff has done a good job of saying and identifying the causes of actions the statutes that he wishes to go under he really has not said either in the complaint itself or in the additional material that he provided

7

by way of the opposition what is false about any of this information.

It is clear from this statement that the circuit court only considered facts outside of the pleading in considering whether to grant appellant leave to amend the complaint. Because the circuit court knew the correct standard and applied it correctly to the present case, we shall treat the circuit court's ruling as one granting a motion to dismiss.

## II. MCEMA CLAIM I – E-MAILS' ORIGIN OR TRANSMISSION PATH

### A. Parties' Contentions

Appellant contends that his pleading met the necessary standard, and that the circuit court erred when it granted appellee's motion to dismiss. He asserts that he did not need to prove, but only had to plead specific facts indicating that appellee initiated, conspired to initiate, and assisted in the transmission of an advertisement via e-mail; that appellee failed to provide truthful information about the origin or transmission path of the e-mails; and that appellee also failed to provide a valid return e-mail address. Appellant asserts in his complaint that the origin or transmission path of the e-mails were false, because they "were sent using an unavailable e-mail address purporting to be legitimate and reachable" and that an e-mail was "returned to [appellant] with a note that 'The mailbox to which you attempted to send your email is not monitored.'" Finally, the complaint further states that the e-mails "contain false information in the 'From' line and in the 'Received from' line."

Appellee contends that the circuit court correctly granted the motion to dismiss, because Appellant's complaint was completely devoid of any description of a false or misleading statement related to the e-mails's origin or transmission path. Appellee counters

8

that an unmonitored mailbox does not demonstrate that the transmission path was false or misleading. In addition, appellee asserts that MCEMA does not require that a mailbox be monitored, but only requires that there not be a false or misleading transmission path. We agree.

## B. Standard of Review

A motion to dismiss for failure to state a claim tests the sufficiency of the pleadings. Md. Rule 2-322(b)(2). Therefore, when reviewing the circuit court's grant of a motion to dismiss, the reviewing court must "assume the truth of, and view in a light most favorable to the non-moving party, all well-pleaded facts and allegations contained in the complaint, as well as all inferences that may reasonably be drawn from them . . . ." *RRC Ne., LLC v. BAA Md., Inc.*, 413 Md. 638, 643 (2010) (citing *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 121-22 (2007)). We will affirm the circuit court's grant of a motion to dismiss "only if the allegations and permissible inferences, if true, would not afford relief to the plaintiff." *RRC Ne.*, 413 Md. at 643. "A reviewing court may look only to the facts and allegations contained in the original complaint." *Id.* (citing *Converge Servs. Grp., LLC v. Curran*, 383 Md. 462, 475 (2004)). The facts in the complaint "must be pleaded with sufficient specificity; bald assertions and conclusory statements by the pleader will not suffice." *RRC Ne.*, 413 Md. at 644 (citations omitted). "Upon appellate review, the [circuit] court's decision to grant such a motion is analyzed to determine whether the court was legally correct." *Id.* (citations omitted).

**C. Analysis**

After reviewing the pleading in the light most favorable to appellant, we hold that the circuit court correctly granted the motion to dismiss, because appellant's pleading failed to indicate the falsity of the e-mails' origin or transmission path.

In 2003, Congress enacted legislation to control unsolicited commercial e-mails, commonly known as "UCE" or "spam." *Beyond Sys., Inc. v. Keynetics, Inc.*, 422 F. Supp. 2d 523, 525 (D. Md. 2006). Congress made certain findings relative to the problems posed by such e-mails. *Id.* According to § 7701(a) of the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 (CAN-SPAM), some of these problems included the false and deceptive nature of the messages, that many senders "purposefully disguise the source of such mail," and that the messages "include misleading information in the messages' subject lines in order to induce the recipients to view the messages." *Id.* at 525-26. Congress additionally found that other senders neglect to provide an "'opt-out' mechanism, or refuse to honor the requests of recipients not to receive electronic mail from such senders in the future, or both." *Id.*

Prior to the enactment of the federal legislation, many states, including Maryland, also passed legislation to address the problems with spam e-mails. In 2002, Maryland passed MCEMA, C.L. §§ 14-3001 to 14-3003, which provides for a private cause of action to seek redress for tortious injury arising from the receipt of misleading or fraudulent, unsolicited, commercial e-mail. We have explained that the Court of Appeals recognized this statute was passed "to curb the dissemination of false or misleading information through unsolicited, commercial e-mail, as a deceptive business practice." *MaryCLE, LLC*

10

*v. First Choice Internet, Inc.*, 166 Md. App. 481, 496 (2006) (quoting *Beyond Sys., Inc. v.*

*Realtime Gaming Holding Co., LLC*, 388 Md. 1, 16 (2005) (*Realtime Gaming*)).

C.L. § 14-3002, which concerns "Prohibited conduct," provides in pertinent part:

> (b) A person may not initiate the transmission, conspire with another person to initiate the transmission, or assist in the transmission of commercial electronic mail that:

> (1) Is from a computer in the State or is sent to an electronic mail address that the sender knows or should have known is held by a resident of the State; and

> . . .

> [(2)](ii) Contains false or misleading information about the origin or the transmission path of the commercial electronic mail[.]

In addition, the Act contains a presumption that the sender of spam knows the

recipient is a Maryland resident "if the information is available on request from the

registrant of the Internet domain name contained in the recipient's electronic mail address."

*Id.* § 14-3002(c). The statutory damages allowed by the Act are the greater of $500 or

actual damages to the recipient of the e-mail, and the greater of $1,000 or actual damages

to an interactive computer service provider, *i.e.*, an ISP. *See id.* § 14-3003(1) and (3). The

Act also provides for the recovery of reasonable attorneys' fees. *Id.* § 14-3003.

Appellant's complaint stated a conclusory allegation that the e-mails "contain[ed]

false and misleading information in the origin or transmission path, or in the subject, or in

both locations. They contain false information in the 'From' line and in the 'Received from'

line." Appellant's claim is based on the fact that the e-mail had an "unavailable e-mail

address purporting to be legitimate and reachable[,]" and that an e-mail was "returned to

11

[appellant] with a note that 'The mailbox to which you attempted to send your email is not monitored.'"

Assuming these facts are true, and looking at the pleading in the light most favorable to appellant, we cannot reach an inference that the appellee's e-mails to appellant contained false or misleading information about its origin or transmission path.

Domain names are the point of origin for e-mail messages. *See MaryCLE, LLC*, 166 Md. App. at 491 n.7 ("A 'domain name' is the 'address of a computer network connection . . . that identifies the owner of the address,' or ISP, such as 'verizon.net' or 'hotmail.com.'" (citations omitted)). A person violates MCEMA if the e-mail "[c]ontains false or misleading information about the origin or the transmission path of the commercial electronic mail[.]" C.L. § 14-3002(b)(2)(ii). Here, appellant argues that an unmonitored and unreachable e-mail address is equivalent to a misrepresentation of the e-mails' origin or transmission path. But this is an inference that cannot be supported by the statute.

MCEMA does not require a commercial e-mail sender to acknowledge, respond, or monitor a recipient's reply e-mail. Rather, the statute merely requires the sender to refrain from misrepresenting the e-mail's point of origin or transmission path. *See Benson v. Oregon Processing Serv., Inc.*, 150 P.3d 154, 156 (Wash. Ct. App. 2007) (holding that e-mail messages from Oregon Processing Service with the domain names swordfishmedia.com, swordfishmedia.biz, mydailyoffer.com, and topofferz.net did not "misrepresent" or "obscure" the e-mails' point of origin or transmission path where "[plaintiff's] replies were undeliverable to the commercial e[-]mail addresses from which

12

the e-mail came. . . . [b]ecause the statute does not require that [plaintiff's] e-mail replies be deliverable" (internal quotation marks omitted)).[1]

Appellant's allegations completely fail to provide any facts supporting an inference that the e-mails contained false or misleading information about its origin or transmission path. *Bobo v. State*, 346 Md. 706, 708-09 (1997) ("[T]he facts comprising the cause of action must be pleaded with sufficient specificity. Bald assertions and conclusory statements by the pleader will not suffice.") (citing *Cont'l Masonry Co. v. Verdel Constr. Co.*, 279 Md. 476, 481 (1977)). This Court cannot, therefore, draw any factual inference from such bald and conclusory statements, and we hold that the circuit court properly granted the motion to dismiss. Accordingly, we hold that the circuit court was legally correct when it determined that appellant's pleading failed to indicate the falsity of the e-mails' origin or transmission path.

---

[1] The language of the Revised Code of Washington Annotated § 19.190.020(1)(a) (West 2015) is similar to MCEMA, which provides:

> (1) No person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message from a computer located in Washington or to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that:

> (a) Uses a third party's internet domain name without permission of the third party, or otherwise misrepresents or obscures any information in identifying the point of origin or the transmission path of a commercial electronic mail message.

### III. MCEMA CLAIM II – SUBJECT LINES

#### A. Parties' Contentions

Appellant contends that the circuit court incorrectly held that his complaint was legally insufficient, because he plead that the e-mails' subject line contained false or misleading information that had the capacity, tendency, or effect of deceiving the recipient. Appellant asserts that he provided examples of misleading e-mails in the exhibit attached to the complaint. He further asserts that appellee fraudulently represented that appellant would no longer receive any e-mails. As a result of relying on this statement, appellant asserts that he did not have a complete list of the e-mails. Appellant concludes that he deserved a reasonable inference that other e-mails existed and they should be subject to review.

Appellee counters that appellee's complaint was insufficient and bare, because it failed to identify any false or misleading statements in the subject line of the e-mails that had the capacity, tendency, or effect of deceiving the recipient. Appellee further adds that the circuit court gave appellant a second chance to articulate the manner in which the subject line violated the statute, but appellant failed again.

#### B. Analysis

We also find that the circuit court was legally correct in its determination that the appellant failed to allege any false statement in the e-mails' subject line. Appellant's complaint alleges that "[t]he false or misleading information in the electronic mail messages had the capacity, tendency, or effect of deceiving the recipient." This statement merely repeats the language of the statute, but does not provide any facts to support the

14

claim. *See Greenbelt Homes, Inc. v. Bd. of Ed. of Prince George's Cnty.*, 248 Md. 350, 360 (1968) (citations omitted) (explaining "[a]llegation of fraud or characterizations of acts, conduct or transactions as fraudulent, arbitrary, capricious or as constituting a breach of duty, without alleging facts which make them such, are conclusions of law insufficient to state a cause of action").

C.L. § 14-3002(b)(2)(iii) provides in relevant part:

> (b) A person may not initiate the transmission, conspire with another person to initiate the transmission, or assist in the transmission of commercial electronic mail that:

> (1) Is from a computer in the State or is sent to an electronic mail address that the sender knows or should have known is held by a resident of the State; and

> . . .

> [(2)] (iii) Contains false or misleading information in the subject line that has the capacity, tendency, or effect of deceiving the recipient.

Appellant has not directed us to any Maryland cases involving deceptive e-mails or advertising claims with facts similar to those in the case *sub judice*. We have not uncovered any Maryland cases on point. Our research reveals that the California case of *Hypertouch, Inc. v. ValueClick, Inc.*, 123 Cal. Rptr. 3d 8 (Cal. Ct. App. 2011), though factually similar to the present case, is distinguishable. In that case, a marketing company sent e-mails containing numerous subject lines and a wide variety of different statements within the email. *Id.* at 31-32. Some subject lines stated "that the recipient of the e-mail [could] get a free gift ("Get a $300 gift card FREE"; "Get a FREE Golf Retreat to 1 of 10 destinations"), others suggest[ed] that the recipient [could] obtain something free for doing a particular

15

task ("Let us know your opinion and win a free gift card"; "Do you think Hillary will win? Participate now for a Visa gift card"), while still others contain[ed] a variety of phrases that might indicate to the recipient that there are terms and conditions that must be fulfilled to obtain the gift ("Let us buy you a designer department store gift card. Participate now"; "Participate to receive a Holiday iPhone! (See offer for details)".) *Id.* at 35.

The court held that the respondents were not entitled to summary judgment, because they "made no effort to explain why a reasonable trier of fact could not conclude that many of the subject lines at issue[], such as those offering a free gift card with no qualifying language, would be likely to mislead a reasonable person." *Id.* The court further reasoned that respondents referred only to isolated e-mails in the record, "such as one e-mail with the subject line 'GAP Promotion,' and argue[d] that those particular e-mails are, as a matter of law, not deceptive. Regardless of whether Respondent is correct that the isolated e-mails it cite[d] are not likely to mislead the recipient, that alone [did] not entitle it to summary judgment on Hypertouch's [] claim, which includes many other subject lines that Respondents do not address." *Id.*

In the present case, appellant did not offer e-mails that contained a variety of subject lines as in *Hypertouch*. *See id.* Appellant's complaint attached an exhibit listing e-mails sent by appellee, some of which stated: "Earn Extra Cash through Affiliate Marketing: Find out How!"; "Save 50% on Domains – Register Yours Today!"; "Attract & Engage More Customers: FREE Whitepapers"; "Season of Savings is Here! Get 3 Domains for $39.99"; "Register Domains for Just $6.99!"; "Limited Time Offer – $2.95 Domain Sale!" All of these e-mails relate to the sale of domains, and appellee is in the business of selling

16

domains. Appellant knew that the e-mails came from appellee. Appellant also knew how to contact appellee, and, indeed, did contact appellee. In addition, all of the domain names contained appellee's name, and the body of the e-mail provided recipients with contact information including the company's website. Moreover, appellee is not a marketing company, and the e-mails do not explicitly offer free items unrelated to a core business. *See id*.

This Court cannot hold, therefore, that appellee's e-mails contained subject lines that had the capacity, tendency, or effect of deceiving the recipient.[2] In addition, from these facts, we cannot draw a reasonable inference that a consumer would likely be deceived or misled by the e-mails.

We hold that appellant's pleading is legally insufficient to support a valid cause of action, because the statements were conclusory without any factual allegations to support them. We further hold that the exhibit attached to the complaint, which merely listed e-mails sent by Network Solutions, is, without more, insufficient to support an allegation that the subject lines were misleading or had a tendency to deceive. *See Cont'l Masonry*, 279 Md. at 481-82 (holding plaintiff's pleading was insufficient to state a valid cause of action because plaintiff's "characterization of [defendant]'s conduct [was] nothing more than a

---

[2] In Appellant's Opposition to Defendant's Motion to Dismiss, appellant also argued that the e-mail messages offered "discounted domain names or 'free' informational reports" and that, because many of the messages are no longer available, "'[r]easonable inferences may be drawn from the Exhibit and [appellant]'s allegations in the Complaint that many of the emails at issue may contain false and misleading subject lines." We also agree with the circuit court that such conclusory statements without supporting factual allegations are insufficient to defeat a motion to dismiss.

conclusory expression of opinion without factual allegations to support it" and "mere conclusions and general averments of a breach of a contractual duty do not suffice" in complex matters, such as where "the breach . . . is not readily apparent"). We, therefore, affirm the circuit court's grant of the motion to dismiss on this claim.

## IV. MCPA CLAIM

### A. Parties' Contentions

Appellant contends that the complaint sufficiently states his claim under the MCPA, because he provided specific names, dates, and specific statements made by the appellee that had the capacity tendency, or effect of deceiving or misleading consumers.

Appellant also asserts that the circuit court erred when it determined that his MCPA claim was barred by the three-year statute of limitations, and that the continuing harm doctrine, as used in nuisance claims, did not apply. Appellant asserts that the present case is similar to a temporary nuisance claim, and as a result, the statute of limitations period was extended after every new occurrence. Appellant relies on *Duke St. Ltd. P'ship v. Bd. of Cnty. Comm'rs of Calvert Cnty.*, 112 Md. App. 37, 50 (1996) (*Duke St. L.P.*), and *Litz v. Md. Dep't of the Env't*, 434 Md. 623 (2013) to support his theory that, because appellee engaged in a consistent practice of sending e-mails that were false or misleading, he may bring successive actions "for each invasion of the plaintiff's land until the period of prescription has elapsed[.]" *Litz*, 434 Md. at 644 (citation omitted). Finally, appellant asserts that the circuit court erred by resolving the statute of limitations issue at all.

Appellee counters that because appellant became aware of the alleged misrepresentation on December 1, 2009, but his complaint was filed on March 7, 2013, it

18

was barred by the three-year statute of limitations. Appellee also argues that the present case is not a tort claim and, therefore the continuing harm doctrine does not apply.

## B. Analysis

### i. Statute of Limitations

The circuit court correctly held that appellant's MCPA claim was barred by the statute of limitations.

We focus here on § 13-301 of the CPA. It provides, in pertinent part:

Unfair or deceptive trade practices include any:

> (1) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;
>
> . . . .
>
> (9) Deception, fraud, false pretense, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with:
>
> > (i) The promotion or sale of any consumer goods, consumer realty, or consumer service . . . .

Claims based on the MCPA are subject to a three-year period of limitations. *Master Fin., Inc. v. Crowder*, 409 Md. 51, 65 (2009) (citing *Greene Tree Home Owners Ass'n, Inc. v. Greene Tree Assocs.*, 358 Md. 453, 480 (2000)). Assuming that appellant's facts are true as stated in the complaint, appellant's claim is barred by the statute of limitations.

In the present case, appellant spoke to appellee's employee in November 2009, and following his request to "unsubscribe," the employee sent an e-mail on November 13,

19

2009, stating, "I have confirmed that your e[-]mail address and phone number have been added to our Do Not Contact lists and any marketing communications will cease within 7 - 10 business days." Despite this, appellant's exhibit shows that he received an e-mail on December 1, 2009, and he continued to receive e-mails from 2009 to 2011.[3] Consequently, appellant was on notice starting on December 1, 2009, that appellee's actions constituted an alleged MCPA violation, and he had a duty to act with due diligence before the statute of limitations ran on December 1, 2012. *See Sternberger v. Kettler Bros., Inc.*, 123 Md. App. 303, 308 (1998) (noting lower court's explanation that once the appellee notified each home owner of a potential roof problem, the home owner had a duty to act with due diligence in determining whether they suffered injury under the MCPA) (citation omitted)). Because appellant brought suit on March 7, 2013, three months after the expiration of the limitations period, the claim is barred.

Appellant's argument that the circuit court erred by applying the statute of limitation without making a factual determination to identify the date of accrual fails. Nothing in the record demonstrates that appellant was unaware that he received an e-mail on December 1, 2009, several weeks after being told by appellee's employee that he would no longer

---

[3] We note that in February 2011, appellant spoke to another employee, but he continued to receive e-mails from 2011 to 2012. The exhibit shows that appellant received an e-mail on April 29, 2011, following the February 2011 conversation. Appellant did not argue that the April 29, 2011, e-mail constituted a separate MCPA violation. Because the circuit court did not consider whether there may be a second MCPA violation, we will not address this issue. *See* Md. Rule 8-131(a) (stating we normally will not address an issue "unless it plainly appears by the record to have been raised in or decided by the [circuit] court").

receive e-mails. Appellant's exhibit attached to his complaint reveals that he received an e-mail as early as December 1, 2009. It is clear from the complaint that appellant was on notice that appellee's conduct constituted an alleged violation of the MCPA when he received the e-mail on December 1, 2009. The circuit court, therefore, correctly dismissed the MCPA claim on the ground that the statute of limitations expired.

### ii. Continuing Harm Doctrine

Appellant asserts that because the present case is similar to a temporary nuisance claim, the continuing harm doctrine applies, and therefore, extending the statute of limitations period. In addressing the circuit court's order granting appellee's motion to dismiss, we are limited to the factual allegations contained in the pleading. Appellant raised the argument that the continuing harm doctrine is applicable to his MCPA claim in his Opposition to Defendant's Motion to Dismiss. During the hearing, appellant did not raise this argument before the circuit court, and so the circuit court did not rule on whether the continuing harm doctrine was applicable. Because the circuit court was not presented with this argument and it did not address it, this argument is not preserved for our review. *See* Rule 8-131(a) (stating that we normally will not address an issue "unless it plainly appears by the record to have been raised in or decided by the [circuit] court").

Even if preserved, appellant unconvincingly argues that the continuing harm doctrine is applicable in this case. Appellant argues that the appellee's alleged conduct of continually sending him e-mails was a "continuing harm," but the cases he cites do not apply that doctrine to the context presented here, and we have found no Maryland case that

21

would support his argument. Moreover, this is not a trespass action by a private owner and there is no allegation of wrongdoing against a property owner.

Appellant's use of *Duke* and *Litz* are misguided. Both cases involved a claim alleging inverse condemnation, a government's unconstitutional taking of real property without just compensation. We explained that "[c]ontinuing violations are recognized as extending the limitations period for civil rights claims, even those concerning an unconstitutional taking of real property. Claims that are in the nature of a 'continuous tort,' such as nuisance, can extend the period of limitations due to their new occurrences over time." *Duke St. L.P.*, 112 Md. App. at 47 (citations omitted). We further explained that while there "may have been continuing ill effects from the original alleged violation, there was not a series of acts or course of conduct by appellee that would delay the accrual of a cause of action to a later date. . . . [A]ppellant's rights were not dependent upon some future service to be rendered by appellee. Appellant was, therefore, on notice of acts by appellee constituting the alleged wrong no later than at the time it deeded the property." *Id.* at 52. Further, appellant alleged a "'continual taking,' as if once it gave title to appellant, there followed new and distinct unconstitutional takings." *Id.* at 47.

In *Litz*, the Court of Appeals held that that the appellant's negligent complaint was incorrectly dismissed, because it was not clear on the complaint's face that it was barred by the statute of limitations. *Litz*, 434 Md. at 649. Caroline County had informed the Town of Goldsboro of its water contamination problems, which stemmed from a history of dumping waste into the storm water system. *Id.* Over ten years, the County then informed the Town that the contamination had reached a crisis point. *Id.* Litz was notified of the

22

contamination, and the Town entered into a Consent Order to remedy the problem, an order that the Town had not complied with as of the date Litz's action was filed. *Id.* We held that a reasonable trier of fact could determine that the allegedly negligent actions by the Town were ongoing and continued to occur during the three years prior to Litz filing a claim. *Id.*

Unlike *Duke St. L.P.* or *Litz*, the current case does not involve a trespass or nuisance claim, but instead involves an MCPA deceptive practice claim. There has been no intrusion by way of trespass or nuisance onto appellant's property, justifying the application of the continuing harm doctrine. Here, appellee's actions of sending numerous e-mails did not delay the accrual of appellant's MCPA action to a further date. Further, appellee did not have a continuous and ongoing duty or relationship with appellant, as in *Litz*, that would excuse appellant from having brought suit within three years from December 1, 2012. *See id.* at 649. In addition, unlike *Litz*, it is clear on the face of the complaint that appellant's MCPA claim was barred by the statute of limitations. *See Litz*, 434 Md. at 649 (holding it was unclear from face of Litz's complaint that her allegation of negligence was barred by the applicable statute of limitations). There is no reason that appellant should be excused from failing to investigate or discover timely the alleged wrong doing until May 2013, when he first filed a complaint. We are, therefore, not persuaded by appellant's argument that the continuing harm doctrine is applicable in this case.

Accordingly, the circuit court correctly held that appellant's MCPA claim was barred by the statute of limitations.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**